IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| TORRIE WELLS, et al., | * |
| Plaintiffs, | * |
| vs. | *   Civil Action No. ADC-24-01746 |
| PENNROSE MANAGEMENT COMPANY, et al., | * |
| Defendants. | * |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

Pennrose Management Company ("Pennrose") and Newtowne 20, LLC ("Newtowne") move this Court for a partial motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. ECF No. 22. Plaintiffs have responded in opposition. ECF No. 24. Defendant has further filed a reply. ECF No. 25. After considering the motion and the responses thereto, the Court finds that no hearing is necessary.[1] Loc.R. 105.6 (D.Md. 2021). For the reasons stated herein, Defendants' motion is GRANTED as to limiting Count V to Newtowne and otherwise DENIED.

### FACTUAL AND PROCEDURAL BACKGROUND

When reviewing a motion to dismiss, this Court accepts as true the facts alleged in the challenged complaint. *See Williams v. Kincaid*, 45 F.4th 759, 765-66 (4th Cir. 2022). Plaintiffs represent thirteen residents, along with some of those residents' minor children,

---

[1] On June 5, 2024, this case was assigned to United States Magistrate Judge A. David Copperthite for all proceedings in accordance with Standing Order 2019-07. ECF No. 3. All parties voluntarily consented in accordance with 28 U.S.C. § 636(c). ECF No. 13.

1

living at Wilbourn Estates in Anne Arundel County, MD. ECF No. 17 at ¶¶ 2-14. Wilbourn Estates is owned by Newtowne, doing business as "Wilbourn" in Maryland. *Id.* at ¶¶ 15-16. Pennrose has served as the management agent for Wilbourn. *Id.* at ¶ 18.

On December 2, 2020, Wilbourn entered into a "Low-Income Housing Tax Credit Covenant" with the Community Development Administration, a unit of the Division of Development Finance of the Department of Housing and Community Development, a principal department of the State of Maryland. ECF No. 17 at ¶ 19. That Covenant bound Wilbourn to its representation that for the length of the entire "Extended Use Period" of 25 years, Wilbourn further understood and intended for "Wilbourn Estates" to be owned, managed, and operated as a Qualified Low-Income Housing Project. *Id.* at ¶ 20. Wilbourn also warranted that "each Low-Income Unit is and will remain suitable for occupancy in accordance with the Code and the Regulations, taking into account local health, safety, and building codes." *Id.* at ¶ 21.

Wilbourn Estates replaced a public housing development of equal size that had been owned and operated by the Housing Authority of the City of Annapolis.[2] *Id.* at ¶ 26. The 25-year Extended Use Period restricted seventy-six of the seventy-seven units at Wilbourn Estates to occupancy by households whose income is between 30% to 80% of the median gross income of the surrounding area. *Id.* at ¶ 27. In spring of 2022, following a construction period that lasted 18 months, Wilbourn Estates opened to new tenants. *Id.* at ¶ 28.

---

[2] The prior development was known as Newtowne 20. ECF No. 17 at ¶ 26.

Of import to this Complaint, Plaintiffs stress that Wilbourn covenanted that "[e]ligible Residents shall be entitled, for any breach of provisions of this Covenant ... to specific performance by [Wilbourn] of its obligations[.]" ECF No. 17 at ¶ 36. Additionally, while each of the Plaintiffs had a lease with Newtowne 20, LLC, for the lease of their home, at the time of this lease and throughout their entire tenancy, the Plaintiffs' units were owned by Wilbourn. *Id.* at ¶¶ 39-40. The units were further operated and maintained by Pennrose, acting as an agent of Wilbourn. *Id.* at ¶ 41.

From when it first opened in the spring of 2022, Plaintiffs contend that "numerous tenants complained about mold and moisture problems within their units." *Id.* at ¶¶ 28-29. Then, on August 9, 2023, August 31, 2023, November 20, 2023, and December 14, 2023, representatives from Environmental Health Consultants, LLC ("EHC") conducted testing in each of the seventeen apartments that belonged to tenants. *Id.* at ¶ 30. Plaintiffs contend that sixteen of these apartments' prior complaints of the mold and moisture "had been almost entirely ignored by Wilbourn." *Id.* Still, of the apartments inspected, sixteen of the seventeen "were confirmed to have varying levels of active mold growth present." *Id.* at ¶ 31. Additionally, of these sixteen apartments with mold growth present, eight of them were "Level 2 or Level 3," which means the units would be expected to present a significant health hazard to the occupants. *Id.* at ¶ 32.

EHC went on to state that:

> Failure to identify and correct sources of water damage and mold and to properly remediate mold will result in further mold and ongoing risks to health and damage of personal property. The presence of mold growth in the units with the most severe mold and moisture would be expected to present a significant health hazard to occupants.

3

ECF No. 17 at ¶ 34. EHC further made recommendations for ensuring that the homes remain safely habitable for the 25 years "in which these families had the right to live and return to these homes year after year." *Id.* at ¶ 35.

EHC's initial report went on to claim that "[t]he extent of the mold and water issues is highly unusual for a building of this age and strongly suggests significant deficiencies in the design, construction and/or maintenance of the buildings." *Id.* at ¶ 37. Additionally, "[d]ue to the limited scope of EHC's inspections, there is a high probability of hidden mold growth in the units inspected as well as additional mold growth in units not inspected." *Id.*

Where it relates to facts common to all Plaintiffs, their Complaint contends that, to induce the Plaintiffs into signing and/or renewing their leases, Defendants falsely stated that the units were safe and habitable when they were not. ECF No. 17 at ¶ 42. Additionally, Plaintiffs allege that "Defendants failed to disclose the fact that the Plaintiff's structure was subject to excessive moisture and toxigenic mold spores[,]" that they relied on these statements and omissions to their detriment, and that their leases "were renewed after Defendants were made aware of the mold and moisture issue." *Id.*

Furthermore, after complaints about mold and moisture in the Plaintiffs' units, Pennrose inspected and installed dehumidifiers and "forced the Plaintiffs to pay the utility cost of running the dehumidifiers." *Id.* at ¶ 43. Despite these steps, and reports regarding mold growth or moisture from each Plaintiff, Plaintiffs claim that "Pennrose failed to respond or otherwise gave a response that failed to adequately remediate or address the

mold or moisture present in the apartment and, as a result, the Plaintiffs continued to suffer damages." ECF No. 17 at ¶ 47.

In addition to mold and moisture issues in their apartments, in December of 2023, some Plaintiffs also suffered a sewage leak in their apartments "as a result of a backup of the main sewer line." *Id.* at ¶ 48. The leak led to the loss of personal property. *Id.* Pennrose confirmed Plaintiffs were not responsible for this leak. *Id.* Still, although all Plaintiffs were unable to reside in their homes, Pennrose only provided some of the Plaintiffs with temporary living arrangements at a hotel. *Id.* at ¶ 49.

Following the Plaintiffs' departure from their homes, Pennrose maintained access to the apartments and granted third parties access to the units to address the underlying conditions. ECF No. 17 at ¶ 51. However, Pennrose granted these third parties access "without concomitant oversight of the third parties at all times" and thus "failed to undertake their duty to ensure that the Plaintiffs' personal belongings were protected." *Id.* at ¶ 52. Plaintiffs' complaint further contends that, "[a]s a result of Pennrose's failure to comply with this reasonable duty of a landlord who grants access to a tenant's apartment when that tenant does not have access or is otherwise not present in the apartment, Plaintiff Wells incurred damages from theft of her private property." *Id.* at 54.

In sum, Plaintiffs allege that each of them suffered the following in some form: property damage; financial losses; emotional and psychological impact; inconvenience and displacement; issues with Pennrose and maintenance; impact on family life; and lost wages. *Id.* at ¶¶ 55-61. To address these alleged damages, Plaintiffs filed suit against Pennrose and Newtowne in Anne Arundel County Circuit Court on May 8, 2024. ECF

No. 5. That suit was later removed to this Court, where Plaintiffs' filed an Amended Complaint on July 31, 2024. ECF No. 17.

The Plaintiffs' Amended Complaint pleads the following Counts: Negligence (Count I), Breach of the Warranty of Habitability (Count II), Breach of Contract (Count III), Breach of Contract – Covenant with Community Development Administration (Count IV), Claim for Attorneys' Fees Allowed by Contract (Count V), violation of the Maryland Consumer Protection Act (Count VII), Claim for Attorneys Fees Allowed by Law (Count VIII), and Breach of Bailment Agreement (Count IX).

On August 16, 2024, Defendants Pennrose Management Company and Newtowne 20, LLC filed a Partial Motion to Dismiss in response. ECF No. 22. Specifically, Defendants request that this Court dismiss all Counts listed in Plaintiffs' Amended Complaint aside from the Breach of the Warranty of Habitability, claiming that each of these Counts fails to allege sufficient well-plead facts to survive a motion to dismiss. *Id.* On September 18, 2024, Plaintiffs provided notice of their own voluntary dismissal as to Counts VII and VIII of the Amended Complaint. ECF No. 27.

## DISCUSSION

**Standard of Review**

A Rule 12(b)(6) motion "tests the sufficiency of the claims pled in a complaint." *Nadendla v. WakeMed*, 24 F.4th 299, 304 (4th Cir. 2022) (quoting *ACA Fin. Guar. Corp. v. City of Buena Vista*, 917 F.3d 206, 211 (4th Cir. 2019)). Its purpose is not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016) (quoting *Edwards v. City of*

*Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)). Rather, "[a] Rule 12(b)(6) motion constitutes an assertion by the defendant that, even if the facts alleged by the plaintiff are true, the complaint fails as a matter of law 'to state a claim upon which relief can be granted.'" *Gaines v. Baltimore Police Dep't*, No. ELH-21-1211, 2023 WL 2185779, at *7 (D.Md. 2023) (quoting Fed. R. Civ. P. 12(b)(6)).

Upon reviewing a motion to dismiss, the Court accepts "all well-pleaded allegations as true and construe[s] the facts in the light most favorable to the plaintiffs." *In re Willis Towers Watson plc Proxy Litig.*, 937 F.3d 297, 302 (4th Cir. 2019) (citations omitted). However, it does not accept as true legal conclusions couched as factual allegations. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). The Complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). Facial plausibility exists when Plaintiff "pleads factual content that allows the court to draw the reasonable inference that [Defendant] is liable for the misconduct alleged." *Id.* An inference of a "mere possibility of misconduct" is not sufficient to support a plausible claim. *Id.* at 679. "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

**Analysis**

I. <u>Negligence</u>

Here, Defendants claim that Plaintiffs fail to properly state a claim for negligence under Count I. ECF No. 22-2 at 8-9. Specifically, Defendants argue that (1) Plaintiffs collectively fail to allege they were owed a duty of care independent of their lease

agreements; (2) that Plaintiffs collectively fail to allege Defendants owed them a duty; (3) that Plaintiffs collectively fail to allege that Defendants are the cause-in-fact of their alleged injuries; and (4) that Plaintiffs collectively fail to allege facts demonstrating their alleged damages and/or sufficient to recover damages. ECF No. 22-2 at 9-15.

To be sure, "[a] plaintiff bringing a negligence claim must establish four elements: 'a duty owed to him (or to a class of which he is a part), a breach of that duty, a legally cognizable causal relationship between the breach of duty and the harm suffered, and damages.'" *Kiriakos v. Phillips*, 448 Md. 440, 456 (2016) (quoting *Jacques v. First Nat'l Bank of Md.*, 307 Md. 527, 531 (1986)). "Because '[t]here can be no negligence where there is no duty that is due[,]' an analysis as to negligence usually begins 'with the question of whether a legally cognizable duty exi[s]ts.' " *Kennedy Krieger Inst., Inc. v. Partlow*, 460 Md. 607, 633 (2018) (*Doe v. Pharmacia & Upjohn Co.*, 388 Md. 407, 414 (2005)). A duty is "an obligation, to which the law will give recognition and effect, to conform to a particular standard of conduct toward another." *Pharmacia & Upjohn Co.*, 388 Md. at 415 (quoting *Dehn v. Edgecombe*, 384 Md. 606, 619 (2005)).

Additionally, "[t]he mere negligent breach of a contract, absent a duty or obligation imposed by law independent of that arising out of the contract itself, is not enough to sustain an action sounding in tort." *Blondell v. Littlepage*, 413 Md. 96, 120–21 (2010) (quoting *Jacques*, 307 Md. at 533–35). *See Wilmington Trust Co. v. Clark*, 289 Md. 313, 328–329 (1981) ("While a tort action in favor of a contracting party can be founded upon a duty arising out of the contractual relationship, ... the duty giving rise to

8

the tort cause of action must be independent of the contractual obligation ... Mere failure to perform a contractual duty, without more, is not an actionable tort.").

Still, "[w]here a contractual relationship exists between persons and at the same time a duty is imposed by or arises out of the circumstances surrounding or attending the transaction, the breach of such duty is a tort and the injured party may have his remedy by an action on the case." *Jacques*, 307 Md. at 534 (citation omitted). "[T]he duty giving rise to a tort action must have some independent basis." *Mesmer v. Maryland Auto. Ins. Fund*, 353 Md. 241, 253 (1999). While "[t]here is no single principle or simple test for determining when a defendant's breach of a contract will also breach an independent duty and give rise to a tort action," where a defendant has "proceeded on the basis that a contractual obligation exists, has undertaken that obligation, and has undertaken it in violation of the appropriate standard of care, ... the plaintiff may, in some circumstances, maintain a tort action." *Id.* at 254.

"At common law and in the absence of a statute, 'a landlord ordinarily has no duty to keep rental premises in repair, or to inspect the rental premises either at the inception of the lease or during the lease term.'" *Hector v. Bank of New York Mellon*, 473 Md. 535, 558–59 (2021) (quoting *Brooks v. Lewin Realty III, Inc.*, 378 Md. 70, 78 (2003)). Accordingly, a landlord "is not ordinarily liable to a tenant or guest of a tenant for injuries from a hazardous condition in the leased premises that comes into existence after the tenant has taken possession." *Matthews v. Amberwood Assocs. Ltd. P'ship, Inc.*, 351 Md. 544, 555 (1998) (citing *Marshall v. Price*, 162 Md. 687, 689 (1932)). However, that principle "is not absolute and has exceptions." *Id.* "[W]hether a landlord owes a duty to

his or her tenants ... with respect to dangerous or defective conditions on the property, of which the landlord has notice, depends upon the circumstances presented." *Id.* at 553. *Cf. Hanson-Metayer v. Rach*, No. 1657 Sept. 2017, 2018 WL 5045773, at *16 (Md. Ct. Spec. App. Oct. 17, 2018) ("Maryland case law has recognized that, under general principles of negligence, a landlord has a duty to exercise reasonable care for a tenant's safety. Critical to the determination of the existence of a landlord's duty is the degree to which a landlord exercises control over the conditions of the property.").

"[W]hen a landlord has agreed to make repairs there is a duty resting on him to do so, and upon his failure the tenant may either sue on his contract or bring an action on the case founded in tort for neglect of that duty." *Bocchini v. Gorn Mgmt. Co.*, 69 Md. App. 1, 17 (1986) (emphasis in original) (citation omitted). Where there is evidence of "explicit notice of the defect, recognition by the landlord of its dangers[,] and ample opportunity to remedy it," a tenant may maintain an action in tort liability "for injuries sustained as a result of an uncorrected defect in rented quarters if there was a contractual obligation to repair the particular defect and a reasonable opportunity to correct it." *Farley v. Yerman*, 231 Md. 444, 448 (1963).

Recently, courts in this District have held that allegations like those that Plaintiffs make here are sufficient to survive a motion to dismiss. *See Heym v. APG Housing, LLC*, 2024 WL 2302306, at *5 (D. Md. May 21, 2024). In *Heym*, tenants sued a housing provider and related co-defendants on negligence grounds. *Id.* Specifically, the Plaintiffs alleged that Defendants owed them a duty to maintain safe and habitable premises, and that the Defendants breached that duty by failing to maintain the premises in a manner

10

that was free from mold and water damage. *Id.* at *6. The Court stressed that, while the tenants likely did not have the status of common law invitees, "the analysis of whether a duty was owed turns on Defendants' response to Plaintiff's mold and moisture complaints." *Id.* Accordingly, since the Plaintiffs alleged that they put the Defendants on notice of the mold, that Defendants failed to adequately address and correct the issue, and because of this failure the Plaintiffs suffered damages, their allegations were sufficient to survive a motion to dismiss. *Id.*

Similarly, here, Plaintiffs alerted Defendants of issues related to mold, moisture, and sewage in their units. ECF No. 17 at ¶¶ 47, 48. Defendants responded, and attempted to address these concerns. *Id.* at ¶¶ 43, 57. However, Plaintiffs allege that this response was inadequate and that they suffered damages due to these deficiencies. *Id.* at ¶¶ 52-54. In sum, Plaintiffs have pled sufficient facts to show that a duty of care existed, that Defendants breached that duty, that the defendants' breach was a proximate cause of their injury, and that they suffered actual harm as a result – at least under the relatively lenient pleading standard that this Court employs under a motion to dismiss. *See, e.g., Twombly*, 550 U.S. at 555. Accordingly, the Defendants' motion fails as it pertains to Plaintiffs' negligence claims under Count I.

## II.  Breach of Contract

Defendant Newtowne claims that Plaintiffs have failed to adequately state a claim for breach of contract under Count III against Newtowne. ECF No. 22-2 at 20-21. Specifically, Defendant claims that Plaintiffs fail "to even recite the elements of a breach of contract claim, much less allege facts sufficient to state a claim for breach of contract

11

against Newtowne." *Id.* at 21. Defendant Newtowne further takes issue with what they characterize as Plaintiffs' "vague and ambiguous collective pleading" and argue this deficiency "renders their Amended Complaint insufficient to state a claim for breach of contract[.]" ECF No. 22-2 at 21.

"[I]n order to state a claim for breach of contract, a plaintiff need only allege the existence of a contractual obligation owed by the defendant to the plaintiff, and a material breach of that obligation by the defendant." *RRC Ne., LLC v. BAA Maryland, Inc.*, 413 Md. 638, 658 (2010) (*Taylor v. NationsBank, N.A.*, 365 Md. 166, 175 (2001)). "Maryland law does not require a plaintiff to cite a specific contractual provision to survive a motion to dismiss." *Class Produce Grp., LLC v. Harleysville Worcester Ins. Co.*, No. CV ELH-16-3431, 2018 WL 1471682, at *9 (D. Md. Mar. 23, 2018). A plaintiff must still, however, allege facts "to adequately show a sufficient writing exists." *Student "B" v. Howard Cnty. Cmty. Coll.*, 512 F. Supp. 3d 610, 616 (D. Md. 2021).

Here, Plaintiffs easily clear this burden. Plaintiffs have alleged the existence of leases with Newtowne that constitute valid contracts. ECF No. 17 at ¶ 110. Along with alleged breaches to the implied warranty of habitability that occurred during Defendant Newtowne's response to mold and sewage issues, Plaintiffs take issue with contractual provisions related to the installing of dehumidifiers, specifically the costs involved with their use. *Id.* at 112. Thus, Plaintiffs have alleged sufficient facts to survive a motion to dismiss on their breach of contract claims in Count III.

III. <u>Standing</u>

In their motion, Defendant Newtowne claims that Plaintiffs lack standing to bring their breach of contract claim in Count IV, specifically for Newtowne's alleged breach of their covenant with the Community Development Administration. ECF No. 22-2 at 22-23. Newtowne argues that Plaintiffs are attempting to exercise a private right of action that is not available under 26 U.S.C. § 42 or the covenant itself. *Id.* at 23. As it relates to the wording of the statute, 26 U.S.C. § 42(h)(6)(B), titled "Extended low-income housing commitment," defines that term as "any agreement between the taxpayer and the housing credit agency…(ii) which allows individuals who meet the income limitation applicable to the building under subsection (g) (whether prospective, present, or former occupants of the building) the right to enforce in any State court the requirement and prohibitions of clause (i)…"

Thus, Defendant Newtowne reasons, the plain language of 26 U.S.C. § 42(h)(6)(B)(ii) contains two requirements to bring suit under the statute: (1) the prospective plaintiff must meet the income limitation applicable to the building under subsection (g), and (2) the prohibitions of clause (i) of 26 U.S.C. § 42(h)(6)(B) must be at issue. ECF No. 22-2 at 22-23. Furthermore, Newtowne argues that the prohibitions of clause (i) of 26 U.S.C. § 42(h)(6)(B) relate to tenant income limitations, not habitability standards. *Id.* at 23.

Plaintiffs, on the other hand, stress that the language in clause (i) of 26 U.S.C. § 42(h)(6)(B) also includes language on eviction prohibitions and the termination of tenancy. ECF No. 24 at 13. Plaintiffs cite to relevant caselaw to support their argument.

13

*Id.* Specifically, in one instance, the Supreme Court of Maryland held that a tenant residing in a LIHTC development could not have their tenancy terminated without good cause. *See Carter v. Maryland Mgmt. Co.*, 377 Md. 596, 609 (2003). In sum, Plaintiffs allege that Defendants failed to maintain the premises in a habitable condition, resulting in an improper termination of their tenancy. ECF No. 24 at 14-15. Plaintiffs further allege that the plain language of clause (i) of 26 U.S.C. § 42(h)(6)(B) allows a tenant to file suit based on the improper termination of their tenancy, thus establishing that they have standing under the statute. *Id.*

Considering both arguments, it's clear that Plaintiffs have made sufficiently well-plead allegations concerning the breach of the Covenant at issue, at least at this stage, and the Defendants' motion thus fails in relation to Plaintiffs' Count IV. To be sure, Defendants correctly articulate the plain meaning rule where it relates to Courts' interpretation of congressional intent. *Beyond Sys., Inc. v. Kraft Foods, Inc.*, 972 F. Supp. 2d 748, 763 (2013) (citing *Hillman v. IRS*, 263 F.3d 338, 342 (4th Cir. 2001) ("The general rule is that unless there is some ambiguity in the language of the statute, a court's analysis must end with the statute's plain language (the Plain Meaning Rule)"), citing *Caminetti v. United States*, 242 U.S. 470, 485 (1917)). However, Plaintiffs point to wording under the applicable statute that permits a plaintiff to bring suit where it relates to the improper termination of a tenancy. ECF No. 24 at 13.

Additionally, and separate from the statutory interpretation arguments at issue, Newtowne has failed to fully respond to Plaintiffs' claims concerning their alleged status as third-party beneficiaries under the covenant between the Community Development

14


Administration and Newtowne. Specifically, Defendant Newtowne claims that the covenant in question fails to grant the Plaintiffs rights beyond those mentioned in the statute itself, and that this covenant does not address matters of habitability. ECF No. 25 at 7. To the contrary, ¶ 3.1(f) of the covenant provides that Newtowne "covenants, agrees, and warrants that each Low-Income Unit is and will remain suitable for occupancy in accordance with the Code and the Regulations, taking into account local health, safety, and building codes[.]" ECF No. 17-2 at ¶ 3.1(f). Furthermore, Plaintiffs point to relevant portions of the agreement that explicitly name eligible residents of the development as "beneficiaries" of the agreement between the Community Development Administration and Newtowne. ECF No. 17 at 33; ECF No. 17-2 at ¶ 7.2.

This language, taken together with the facts alleged, and the relatively lenient pleading standards at issue, make clear that Plaintiffs have pled sufficient facts in their Amended Complaint as to Count IV. It follows that this Court will deny Defendants' motion as to this Count.

IV.     Plaintiffs' Claims for Attorneys' Fees

Defendants move this Court to dismiss Plaintiffs' claims for attorneys' fees under Count V, as they argue that Plaintiffs lack standing to bring their claims under Count IV. ECF No. 22-2 at 24. Defendants also request that this Court limit Plaintiffs' claims for attorneys' fees to Newtowne, as "Count IV is against Newtowne only, Count V must also be limited to Newtowne given that both counts are based on allegations related to the 'Covenant' created under the LIHTC program." *Id.*

At the same time, as discussed above, Plaintiffs have pled sufficient facts to deny the motion as to Count IV. Additionally, Plaintiffs point to portions of the Covenant in their Complaint that appear to authorize "any person acting on behalf" of CDA to "enforce or restrain violation of any of this Covenant" to recover costs and attorneys' fees in the event they prevail in proceedings to enforce or restrain a violation of the Covenant. ECF No. 17 at 34; ECF No. 17-2 at ¶ 7.4. It follows that Plaintiffs have pled sufficient facts as to Count V to meet the pleading standard at issue under a motion to dismiss. Thus, this Court will deny Defendants' motion as to Plaintiff's Count V. At the same time, however, this Court will further limit Count V to Defendant Newtowne only, as both counts relate to the Covenant under the LIHTC program discussed in Count IV.

V. <u>Breach of Bailment Agreement</u>

Next, Defendants claim that Plaintiff Torrie Wells fails to allege any facts that would suggest a breach of a bailment agreement occurred on the part of Defendants. ECF No. 22-2 at 26. Specifically, Defendants argue that the Amended Complaint "fails to allege any facts indicating that Plaintiff Torrie Wells created or entered into a bailment agreement with Defendants, individually or collectively, and thus Defendants cannot have assumed a duty of reasonable care in protecting Plaintiff Torrie Wells' property." *Id.* Furthermore, Defendants argue that even if a bailment agreement existed here, the Amended Complaint "fails to allege any facts sufficient to show that Defendants, either individually or collectively, could have avoided loss or damage to her personal property by ordinary care or diligence." *Id.* at 27.

16

To be sure, a bailment is a relationship created by the transfer of the possession of goods, from one party (the "bailor") to another party (the "bailee"), without the transfer of ownership. *See Gen. Refining Co. v. Int'l Harvester Co.*, 173 Md. 404, 415 (1938). If such a relationship is proven, the bailee is deemed to have assumed the duty of exercising reasonable care in protecting the bailed property. *Broadview Apartments Co. v. Baughman*, 30 Md.App. 149, 152 (1976). The bailee, however, is not an insurer of the property and owes only the duty of care that a reasonable person would exercise towards similar property. *See Trans-System Serv., Inc. v. Keener*, 249 Md. 369, 372 (1968). Of import to the events at issue here, a bailment may also arise in situations where one holds the property of another without reward, or involuntarily, in what is known as a constructive bailment. *See, e.g., Choice Hotels Int'l v. Manor Care of Am., Inc.*, 143 Md.App. 393, 400 n.1 (2002) ("Involuntary or constructive bailments arise in situations in which one person receives lawful possession of another's property, other than by virtue of a bailment contract"); *Schermer v. Neurath*, 54 Md. 491, 496 (1880) (recognizing the rule that a person who keeps property for the benefit of another without reward or in other words, involuntarily, is liable for wrongful conduct resulting in the loss of that property).

Here, the Amended Complaint alleges that "[u]pon notice by Pennrose that the conditions of her apartment required her to be temporarily removed from their Home, Ms. Wells relinquished control of her Home to Defendants and was advised that she must vacate the Home temporarily." ECF No. 17 at ¶ 138. With control of access to the Home independently of Plaintiff, Defendants provided access to third parties, along with

Defendants' own employees and agents. *Id.* at ¶ 139. The Amended Complaint further alleges that those third parties, agents of Defendants, or both, removed personal property from the Home of Plaintiff Torrie Wells and never returned this property to the Plaintiff. *Id.* at ¶ 140. In addition to this property, the Amended Complaint alleges that Defendants removed and destroyed Ms. Wells personal property from her locker at Wilbourn Estates without giving her the opportunity to remove the property herself. *Id.* at ¶ 141. Thus, the Amended Complaint attributes Plaintiff Wells' "damages, past present, and prospective" to Defendants' breach of their duty to exercise reasonable care under the contract of bailment. ECF No. 17 at ¶ 142.

In sum, the Amended Complaint contains sufficient well-plead facts to allege a constructive bailment relationship was created here. As Plaintiff Wells stresses in her response, ECF No. 24 at 20-21, the bailment relationship here resembles constructive bailments recognized by Courts in Maryland, specifically those where property is cared for without reward or involuntarily. *See, e.g., Choice Hotels Int'l v. Manor Care of Am., Inc.*, 143 Md.App. 393, 400 n.1 (2002) ("Involuntary or constructive bailments arise in situations in which one person receives lawful possession of another's property, other than by virtue of a bailment contract"). Additionally, the Amended Complaint explicitly alleges that Defendants breached their duty of reasonable care due to their deficient handling of the remediation process, including but not limited to how they supervised third parties, along with their failing to provide Plaintiff Wells with notice before they destroyed personal items she had stored in her locker. ECF No. 17 at ¶ 137-42. Thus, at

least at this stage, Plaintiff Wells has provided sufficient well-plead facts under Count IX. Accordingly, the Court will deny Defendants' motion to dismiss as to these claims.

## CONCLUSION

For the reasons set forth in this Memorandum Opinion, Defendants' Motion (ECF No. 22) is GRANTED as to limiting Count V to Newtowne and DENIED as to all other Counts of Plaintiffs' Amended Complaint. A separate order will follow.

Date: 11 October 2024

A. David Copperthite
United States Magistrate Judge